We'll hear argument first this morning in Case 11-465, Johnson v. Williams. Ms. Brennan. Mr. Chief Justice, and may it please the Court, a fairly presented claim has been adjudicated on the merits when a State court issues a decision denying relief, unless it has made a plain statement to the contrary. And this is especially true where the State court has grappled with the substance of the alleged error. And this rule is correct for three reasons. First, State courts discharge their duties. They are sworn to uphold the Constitution. Therefore, they must adjudicate claims that allege constitutional violations. So when a State court issues a decision denying relief, it must necessarily have considered and rejected all of the claims. Sotomayor What happens when there is a challenge to the admission of evidence on a State law ground and on a Confrontation Clause ground? And all the State court does is grapple with the evidentiary rule. But it's self-evident that the Confrontation Clause is based on a different theory. Are we to assume in the light of that kind of decision that the Court actually grappled with the Confrontation Clause? Your Honor, we would assume that there the State court, through its denial of relief, did adjudicate the presented Confrontation Clause claim. And that would be because, for a number of reasons. First, the presumption of regularity that judicial officers do do their job. And it can only be rebutted by clear evidence. Sotomayor Am I to make that assumption when, before our line of cases in this area, State courts generally had held that if hearsay was admissible under their evidentiary rules, that that was the end of their Confrontation Clause challenge? Is a Federal court supposed to continue with that presumption in light of an undisputed State's statement that their rules are consonant with the Confrontation Clause? In that situation, if the State court rule was consonant with the Confrontation Clause, we would have certainly an adjudication of the Confrontation Clause. Let's assume it's not after our, we render our decision. And if it were different, we would still hold that in that situation, as this Court in relying on Richter, in that situation, it would be more of a summary denial on the Confrontation analysis. Kennedy. Well, we can continue and probably should talk about this broad theory that you want us to adopt. But really, in this case, the court of appeals in the State system cited Nessler. And Nessler, in turn, cited at page 104 of the Petition Appendix a Supreme Court case. You don't even, you say citation, you don't even give, but it's, it's the Supreme Court case, United States v. Wood, written by Chief Justice Charles Evans Hughes. And it seems to me it's, it's very clearly ties its State analysis to the Federal Constitution and a Sixth Amendment discussion in Wood. So it seems to me that you're, you have a very strong argument that they did adjudicate the Federal claim anyway. I know you want us to maybe reach the bigger issue, but, and your brief almost downplays it, but it seems to me pretty clear that you have the argument that you don't strongly make, although you don't by any means abandon it, that here the State law was tied to the Federal standard, and the Federal standard was the basis for the entire jurisprudence. Yes, Your Honor. We agree that in our situation it just so happened to be that the State standard also encompassed this Court's Sixth Amendment jurisprudence because it was citing U.S. v. Wood and it was citing Smith v. Phillips among the Sixth Amendment cases. In our case, it just so happens that it does. But we posit also that our case shows why this is illustrative as to why this Court should adopt the broader rule that in situations where a State court has denied relief or a claim has been fairly presented, that this Court and all Federal courts should assume that the State courts did their job by adjudicating claims. Irrebuttably. Your Honor, we suggested that it can be rebutted by a plain statement if the State court says that it is not reaching it, or more particularly if a State court imposes a procedural bar. I see exceptions to that already. There are cases where the State court reaches one prong of the Strickland standard and has no need to go to the second. Yes. Sotomayor, you really can't say in that situation that you can assume they reach the second, can you? Well, Your Honor, I posit that those Strickland cases are different. And they are different because in all of those cases of Wiggins v. Smith and Rompia, that there, the courts, what the State court did was follow exactly what this Court has said of how a Strickland claim may be answered entirely by only addressing the one prong of Strickland. And so there they are doing exactly of adjudicating everything through the analysis of one. Additionally, in those cases, by doing so, the courts are not in any way suggesting that the State courts failed to do something. Well, suppose that the the We are straying pretty far from this case, and correct me if I'm wrong, but as I understand it, the argument was made under State law, and then Williams said there was an abuse of discretion under State law, and therefore, the Sixth Amendment was violated. So there really isn't any independent — Williams hasn't stated any independent Sixth Amendment right. It's State law was violated, and then, therefore, the Constitution was violated. So it seems to me, if we just look at the position that Williams was taking, these two, the State and the Federal claim, are tied together, and we don't — to go beyond this case and imagine some other case that might come before us someday would not be wise. Yes, Your Honor, I completely agree with the view that here Williams did present a completely dependent Federal claim. And, therefore, the State's analysis, the State court's analysis would have fully adjudicated that. However, we suggest that this case does illustrate why that broader rule is important, and it's important because otherwise other Federal courts may not view it as this Court did of seeing it as a dependent claim. Roberts The court of appeals whose decision we're reviewing understood the Respondent to present a separate State claim and a separate Federal claim, correct? Exactly. That's the predicate to the whole question we have before us. Exactly, Your Honor. So the brief filed with an intermediate court of appeals contains 25 pages of argument on a Federal constitutional claim. Let's say it's a Brady claim. And then it also has two other claims, two other arguments. They are State law claims, and each one is dealt with in two pages. And then the State court, the intermediate court of appeals, issues an opinion that addresses only the two State law claims and says nothing about the Federal constitutional claim. You would say there that it's conclusively presumed that they adjudicated the Federal constitutional claim. Yes, Your Honor. In that situation, we would, one, because of the presumption of regularity. Two, because of what this Court has said in Richter where we could view it as a summary denial. And third, what underlies that is the view that if it's not written in the opinion that it has been ignored. But that's not what this Court said in Castile, where it said if a court chooses to ignore in its opinion, which should be read as in its opinion writing, means that that claim has been impliedly rejected. So therefore, just because a State court chooses not to write about it in its opinion does not mean that it didn't consider and reject that claim. Why is it necessary to go so far as to require a plain statement? Why wouldn't you protect the same interests if you had a rule that said that there is a presumption that they have adjudicated the claim on the merits, but that it can be rebutted if there is a strong inference that they overlooked it or a very strong inference that they overlooked it? Then you wouldn't have situations like the one that Justice Sotomayor posed in her hypothetical or the one that I just mentioned. Sure, Your Honor. But the reason why there should be a plain statement is because it's long been held that in order to rebut that presumption of regularity, you need clear evidence. And really the only clear evidence that one could have would be a plain statement. And this Court reinforced that when it said in Richter it talked about an indication or other State procedural bars, and it cited Harris v. Reed. And Harris v. Reed is a case that talked about plain statements. Scalia. Well, I assume that in many cases, especially capital cases, one could argue for years over whether, in fact, there was enough indication that the Court did not consider it or not, right? And every year is a reduction of sentence, so to speak. Exactly, Your Honor. And that's why having a broader rule with this presumption. But I suppose the broader rule, if you took $28.52 out of the State's judiciary budget and bought them all a stamp, which just says, we have considered and rejected all constitutional claims, then there would be no problem. Your Honor, they really do that when they say affirmed at the end of the decision. It really adds nothing. If it were a stamp, it would be merely reflexive and therefore would, in the end, give you no indication whether an argument had been considered or not. Any idea, based on your experience, how many separate claims are typically raised in a capital case of this sort? If this was not a capital case, but an LWOP case. However, in a capital case, there can be hundreds. And we are hundreds of pages of documents in an or hundreds of pages in an appellant's opening brief. And therefore, if one were to slip in, in a phrase, an apparent claim, and that the State court happens not to advertise it. There would be a lot of good debate over whether it was presented clearly enough, is presenting it in two sentences enough to require the court to answer it. I can see a whole, you know, a whole train of litigation on this wonderful subject, a whole new area of law. Has the State supreme court overlooked something that was clearly enough presented? And is there enough indication that the State court has overlooked it? I mean, that's the problem. Sotomayor, all of the circuit courts basically have a rule close to the one announced by Justice Alito, don't they? Your Honor, if they happen not to mention one particular claim? All of them have essentially a presumption that's rebutted by some form of evidence. I don't know, except for perhaps the Eleventh and this circuit that have a clear, almost irrebuttable presumption. I'm sorry, not the Ninth, but the Eleventh. The Eleventh Circuit, and I believe that the Sixth Circuit as well. But it's not as absolute as the Eleventh. It's true that the Eleventh Circuit has a broader rule, and I believe that the Sixth  Sotomayor, I have a, you know, I mean, for every rule you're going to find an exception that abuses it. It's the nature of human nature. Do you know what the total number of habeas petitions there are, and what the percentage that are actually granted?  Would you be willing to accept that it's, in relationship to the total granted, it's very, very small? Yes, I believe that there — that is true, that there is a small number of granting petitions. So whatever the abuse of the system is, it hasn't halted justice? Well, Your Honor, the thing is that, and I think that Justice Scalia has averted to this, is that if we were to require only an indication, it would create a situation where there would be all this litigation. And that's why this Court, when it does, has accepted conclusive presumptions in other cases. For example, in Coleman v. Thompson, talked about, we will accept these conclusive presumptions because they work in almost all of the cases, and we will accept the small number of errors in exchange for the reduction in workload. So why can't they just do what we used to do?  I mean, there are different forms of petitions of different kinds, and a lot go to the staff attorneys that look them over and flag the arguments, and you put at the end, just to be on the safe side, if any other arguments that are made are rejected. All right? Now, that serves one purpose. A human being has a hard time writing that, unless he's thinking I've looked this over pretty carefully, and if it's a staff attorney preparing a draft, the staff attorney has really looked with some care, and so it serves a purpose. It means they don't do it just as a form. They could turn it into a form, but they shouldn't. And so let them write that. And therefore, if we get nothing, then you put into play these presumptions, et cetera. Justice Breyer, I would disagree with that proposal, because it is, in the end, just could become reflexive. Well, anything, judges can not do their job. But when you write something like the word denied, which is all most district judges write in respect to many motions, they read the motion, they think about it, that's their job. So similarly, a staff attorney or a judge who's going to have to write certain words will want to do his job or her job, and they'll do it. I'm just suggesting that it won't — that isn't a big deal. Now, in this case, they didn't write that for some reason. Many do. Scalia, doesn't the word denied at the end of the order say the same thing? We've considered all of the points made, and we have denied them. And wouldn't it be the case that if you require such a statement, but you have a situation where a Federal question occupies 90 percent of the brief, and the Court only addresses explicitly the State things, the State claims, and then at the very end says we have considered all the other claims, presumably including the 90 percent Federal claims that are not addressed, would we be out of the woods, or would you be here again arguing the same problem? I think we could be arguing the same problem. I think, as Your Honor noted, that the inclusion of the word denied, or if you're affirmed, covers that. It says exactly if we have considered all of the other claims. Kagan, can I ask you what you mean by a plain statement? Because you've said a couple of times a plain statement to the contrary. Justice Sotomayor and Justice Alito have given you hypotheticals, very different from this case, but hypotheticals where there is, I think, a strong inference that there was no adjudication of the particular Federal claim alleged. You said that's not a plain statement, even though it seems as though there's a strong inference. So what would be a plain statement? A plain statement would be a procedural bar. Or if there were to be a court were to say we're not for some reason going to reach the constitutional claim, that they really need to say it out loud. I don't know why they would say that, but that's what we require. Yes, I don't know why they would say that either. By the way, we're not adjudicating this, you know. So if that's your test, your test is an irrebuttable presumption. No, Your Honor, I would disagree, because there is the possibility of having the procedural bar. What if there are the brief raises five arguments and the opinion says the appellant has raised four arguments? Is that a plain statement that the fifth argument was overlooked? I would say that it possibly could be, if it were in that situation. However, I would still go back to really the Richter presumption of saying that that word at the end, denied, denied is denied is denied. And it covers every fairly presented claim. That's not a plain statement? What if there's one Federal claim, one Federal argument and five State arguments, and the opinion says this appeal raises only issues of State law? Is that a plain statement? Possibly it could be, Your Honor. But here we don't, we don't have that situation. Ginsburg. May I ask you about the underlying claim here? It is quite troublesome. I think this is a State that doesn't allow an Allen charge, is that right? Correct, Your Honor. And the possibility of getting rid of the juror, the holdout juror in this way, is a is really troublesome. I mean, the judge can't give an Allen charge to urge the jury to deliberate further, but can say, now the judge knows who the holdout is, and to just dismiss the, that juror, it's a, it is, it is very troublesome. Well, Your Honor, the thing is that here we have a trial court who is looking at this juror and makes the determination that the juror is biased. And therefore, if there was to be anything of any sort of constitutional violation, it would be to keeping that juror, a biased juror, on the jury. That would be a violation of Sixth Amendment. Well, I have to, I mean, this takes us into the merits, which is really interesting, but I probably shouldn't go there. But as long as we're there for a minute, I, I agree with Justice Ginsburg. I've never seen a procedure like this. And I, I looked, I looked at the Federal cases, Brown and Thomas, that the Cleveland court cited. Those, and Wood was a voir dire, was, was not mid-jury. I, I just hope this doesn't happen with much regularity. And the fact that the trial judge is upset, that's, that's the, the reason that you should leave the jury alone, it seems to me. I think it's very troublesome. Well, Justice Kennedy, it's a situation where, through the voir dire, what comes out is not that we're trying to get, that the, the trial judge is feeling to get rid of this juror because he's the holdout juror, but because, through the voir dire, he determines that this juror is biased. And that is the bias. And that's what makes it different. That the person is not guilty is a bias? No, Your Honor. That's certainly not it. It's the, the bias comes from what he was saying of his disagreement or that he really did not believe with the felony murder rule. Therefore, it's that, that under any evidence, whatever evidence was presented, that he would not be able to convict because he disagreed with the very basis of the law. That, that's a, that may be your strongest point. But most of what he said was basically, this is a murder case, and the evidence has to be beyond a reasonable doubt. And I think it has to be clear enough for me to be convinced. Is that a biased juror? That is not a biased juror, but that's what he said to the Court. But what comes out through the voir dire of the other jurors is not that he was using a reasonable doubt standard, but that he was using a no-doubt standard, an absolute doubt standard. And that's where he's not following the law, and that's where he's biased. And that's where he becomes a biased juror who has no right to be on that jury. Sotomayor, I must say that like Justice Kennedy, I'm deeply troubled when trial judges intrude in the deliberative processes of juries. Most of the time when we're assessing bias, we're assessing it on the grounds of extraneous evidence, a juror who has said one thing in voir dire and is now either a convicted felon or introduced extraneous circumstance. But the degree of being convinced is the very essence of jury deliberations. This case is troublesome. Well, Your Honor, I believe in this situation, it's one where the judge was presented with possible misconduct and, therefore, had to do something. Had the judge done nothing, we could have possibly been in the same situation. And under California law, it's where this examination cannot be so intrusive. So we maintain that it was not. It was only to the degree in which we were finding that there was a biased juror. At that point in time, the Sixth Amendment required that that juror be removed. Kagan.  GOTTLIEB Could I go back, Ms. Brennan, to your basic theory, because I guess I'm not sure I understand what you're arguing now. In your brief, you talked about focusing on the error. So if evidence was admitted, you would say it doesn't matter that there were three different theories for why the admission of evidence was wrong. We should just look at the fact that we're talking about the admission of evidence. Now, is that what you're arguing, or are you also saying what the States say in their amicus brief, that even if, you know, one claim is about the admission of evidence and one claim is about ineffective assistance of counsel, you would still apply the same rule? Brennan What we're saying is that, at the very least, in our type of situation where the Court discusses the alleged error, there's an adjudication on the merits. But that plays into the larger and broader rule. Kagan Well, why does your theory make any sense? I mean, we're supposed to be interpreting a statute here. It says whether the claim was adjudicated on the merits. Usually when we speak of claims, we speak of legal grounds for relief. We don't look at a claim and say, we'll just check, you know, what we're going to do. We don't use an operative facts test. And you seem to be suggesting that that's the kind of test we should use. Brennan Yes. And especially if you're going to look at the State courts, which are, must decide both the Federal and State questions. So their interpretation of what a claim is does not necessarily mean what it eventually becomes when it's in Federal habeas. And the Federal habeas courts are limited by their jurisdiction to only be Federal law theories. And a Federal petitioner can only bring such claims. So for that reason, it's not a good fit for the State courts to limit them in that way. And that's why we're saying, at least in a situation where a State court has grappled with the substance of the error, that it has adjudicated the claim, which it could have viewed as, as was here, sort of a single claim independent, or it could have State law theories and Federal law theories that it puts together. And I would like to reserve the remainder of my time. Thank you, counsel. Mr. Hermansen. Mr. Chief Justice, and may it please the Court. The rule this Court should adopt is the same rule that the consensus rule of the Courts of Appeals. When they look at an opinion, a reasoned opinion, they look at what the opinion says, the text of the opinion. And if the opinion grapples with the bulk of the claims that are in the prisoner's appellate brief, but omits to address one of the claims, then there's an inference that the claim has not been adjudicated on the merits. Well, just the way you phrased it, if it addresses the bulk of the claims, under your theory it has to address every claim, correct? If, under my theory, if there's a Federal claim that's overlooked or omitted, then the inference. But not, no, no, not overlooked or omitted, not discussed. Correct. Not analyzed in the opinion. Correct. Here it's Sixth Amendment. So the Sixth Amendment was not mentioned. The Sixth Amendment was not. There's no indication from the opinion itself that the Sixth Amendment claim was adjudicated. You agree that if, this is raised when your friend was at the lectern, if the court at the end said not only denied, but said I've considered all other arguments not addressed, denied, then you have no case, correct? Correct. And that's the recommendation of the NACDL brief, is that, and we do see that a lot. There is, where there are opinions that say we've reviewed and considered all claims raised and reject them. And we've considered all other questions raised, those not discussed. Well, Justice Ginsburg, as Justice Breyer was saying, we, and as my friend was arguing, you know, there is regularity, and we do, it's fair to assume that a judge who's looking at an appellate court brief is going to do their job and look at the brief. So that. Well, you're not willing to assume that when the judge says denied. You're willing to assume that when the judge said I've looked at everything denied. Right. It seems to me if you give them the presumption of regularity in the one case, you ought to give it to them in the other. And I don't think the presumption of regularity should apply here. Justice, this Court in Schmitz v. Digman looked at the opinion and looked at what was argued and said all the courts below made a mistake. It was fairly exhausted. And I would like to address Justice Scalia's concern about a whole area of litigation that might occur. That won't happen for one reason. In the habeas context, the claim must be fairly presented, period. If the Federal constitutional claim is not fairly presented, you're not in Federal court. And so there's already a whole body of law talking about what a claim is. And my friend tries to avoid the word claim because it's inconvenient. Was it fairly presented here? It was fairly presented. Given that the argument was abuse of discretion? It was. Yes, Justice Ginsburg, it was fairly presented. And in the red brief at page 39, and I talk about that, and also at page 43 of the red brief, I indicate that the Attorney General conceded that the claim was exhausted. Kennedy, of course, again, this is fact-specific to the case. It doesn't address the rule that we want to address, and there was reason for taking that case. But 104a, the State court, State appellate court, cites the United States v. Wood and it also cites Cleveland. And Cleveland had three circuit court cases, all of which involved the Sixth Amendment. It seems to me that the Federal constitutional claim was intertwined with the and controlling of the procedural matters that the Court discussed. I just don't see the case is here even on your theory. Justice Kennedy, I'm glad you brought that up because I do want to address your concern on that. And it's Dye, this Court's opinion in Dye, takes care of the intertwined argument. In Dye, this Court said that as long as the claim, the Federal nature of the claim is presented, even if it's presented under the same heading, it's fairly presented on a habeas claim. Alito, but if a State court here didn't, would you disagree that the California Supreme Court in Cleveland, correctly or incorrectly, adopted a rule that it believed was consistent with the Federal Constitution? If that were the case, then we would have a different case. But in Cleveland, the California Supreme Court explicitly rejected or declined to adopt the Brown, Simington, Thomas, and Dye. Alito, were they under any obligation to agree with Federal courts of appeals as to the interpretation of the Sixth Amendment? They were not. Well, isn't the reasonable reading of Cleveland that we're adopting this rule, this is our State rule, it's based on a very broadly worded State statute, it is informed by our understanding of the Sixth Amendment, and we disagree? We mention the Federal courts of appeals' decisions on this issue, and we respectfully disagree with their interpretation of the Sixth Amendment? Correct. So if the – if Cleveland were to come before this Court, then there would be a clear indication from the opinion that they had considered the Federal standard, but didn't adopt it. I'm sorry. But this case is in Cleveland. In this case, what happened was – I'm not sure how you can say that. I mean, I think the simplest statement of the State rule is that the State believes that if you remove a juror for actual bias, that that is okay under the Sixth Amendment. They said it in Cleveland. They were presented with the argument in this case by the briefing that the juror was not biased, and hence the Sixth Amendment was violated. And they ruled to say he was biased, and I see as a natural clear inference that they were saying the Sixth Amendment wasn't violated, because he was biased. There – the problem with that determination is that there are – there's the Federal standard on what is – what the Sixth Amendment standard is. So under Thomas, Simington, and Brown – That's a different question. That question is whether the California Supreme Court's Cleveland decision, its assumption that a biased juror violates – doesn't violate, the removal of a biased juror doesn't violate the Sixth Amendment, is that an unreasonable application of Supreme Court precedent, not circuit court precedent? This gets to the – my friend's argument about how their argument is upside down. They're saying that we're trying to incorporate into 2254d.1 what is contrary to and what is the United States Supreme Court law. But we never get to d.1's United States Supreme Court law limitation, because looking at the text of 2254d, you start with, was the claim adjudicated on the merits? That's the threshold question. So if the claim was not adjudicated on the merits, you don't get to the United States Supreme Court law limitation. Well, isn't this – I'm sorry, go ahead. Instead, you look at Brown, Thomas, and Simington, and they say that if the juror's views on the merits of the case have been expressed, and the juror might be kicked off because of – which is exactly what happened here, kicked off because of the views on the case, then the Sixth Amendment has been violated. What Supreme Court precedent commands that result? Supreme Court precedent doesn't command it, but because it's de novo review and because it's a quid pro quo, 2254d, Congress said States are going to get deference and they're going to get a limitation on the law that the Federal courts can look at, United States Supreme Court law. But for that quid pro quo to happen, for the States to get that deference and limitation on the law, they have to have adjudicated the claim, because that's the main event that's supposed to be in State court. That's where the bite of the apple is supposed to be, is State court. Roberts. The discussion you've been having with Justice Sotomayor and Justice Alito highlights another problem with your approach, is that the court is going to have to decide in every case whether or not State law is coterminous with Federal law. And there was – I don't know that the Ninth Circuit got that question right in this case or they got it wrong, but in every case, or in many of the cases, the claim will be made on the part of the State, well, yes, they just said State law, but it's the same as Federal law. And the Ninth Circuit recognized that as an exception to their rule. Isn't that really going to cause all sorts of collateral litigation? And it's not, because this is the rare case. I'm sorry? I'm sorry, it's not, Your Honor. Oh, it's not. Mr. Chief Justice, this case is a rare case where, looking at the opinion, we can't tell if they adjudicated the claim on the merits. And it appears, every appearance and inference is that they overlooked it or didn't adjudicate it. So that's a rare case. Normally, just looking at the opinion, you can tell if they adjudicated the Federal claim. Except in a case like Harrington v. Richter. Harrington v. Richter created a very simple, straightforward, and appropriate presumption, because when you have an unexplained order, it makes sense that, in that context, that they've adjudicated everything on the merits. And to give the greatest respect to the State courts in comedy and Federalism is to look at what the order says. And if it's a reasoned opinion, to take it at face value. It says what it says. It doesn't say what it doesn't say. Well, I may be just repeating some of my colleagues here, but I think if you take this opinion at face value, it cuts against you. I mean, it's a discussion they're applying Cleveland. Cleveland is a constitutional decision. It's a Federal constitutional decision. The concurrence makes that completely clear. California has made it completely clear in other cases post-Cleveland that it thinks it's applying the Sixth Amendment. Whether it's applying a correct interpretation of the Sixth Amendment is unclear, but it's also completely irrelevant. It thinks it's applying the Sixth Amendment, and it's reaching a constitutional judgment, isn't it? No, Your Honor. A careful reading of Cleveland shows that the majority does not adopt the Federal standard. So the consensus standard in the Federal circuit courts is that if the merits of the Court's decision is not to adopt the consensus standard, it specifically rejects the consensus standard. But it's entitled to do that as a State court with no Supreme Court decision that it has to follow. It can say we have a different view of the Sixth Amendment. I'm just repeating what Justice Alito here said, and that's what it's doing. It's saying we're applying the Sixth Amendment, we're applying it differently from the way these other courts have done so, because we think they're wrong. And so two points on that. The first is the concurrence chides the majority for not being concerned about the Sixth Amendment. The second is the my friend cites People v. Allen with an ellipse and doesn't give the full context of Allen. So when they cite more recent law, 2006, it talks about how the demonstrable reality test, which is just a notch up above substantial evidence, is designed to protect constitutional rights of due process in the Sixth Amendment. What they don't say is in People v. Allen, they only reach the statutory issue. They never reach the constitutional issue. So at most it's dicta, and the California Supreme Court has never held, has never addressed the issue of when is the Sixth Amendment violated when a juror is kicked off in this fashion. And instead, they — their role is we allow free intrusion into the deliberative process. We don't adopt Symington and Brown and Thomas when they say that when a juror's views on the merits of the case, questioning should stop. Instead, we think that questioning should be free to continue. Alitoso, Section 1089 is very broadly worded, isn't that right, the section that was being interpreted in Cleveland? Section 1089, I don't think. You think that the California Supreme Court said, we're announcing a rule of State law, and, you know, we've been told that this rule is inconsistent with the Sixth Amendment, but we don't care, and we're not going to worry about what the Sixth Amendment requires, we're just going to adopt this rule of State law. You think that's what they did? In People v. Collins, the California Supreme Court said that 1089 is a rule of efficiency so that courts can efficiently deal with possible juror bias. And that's still good law. That hasn't changed. So that's why Justice Werdegar in her concurrence was saying we need to be worried about the Sixth Amendment. And the only reason she joined in the opinion was it used to be, well, if there's just substantial evidence that the juror is not deliberating as a juror should, she wasn't satisfied that that was sufficient. But because there had to be a demonstrable reality from the record that the juror wasn't deliberating, she signed on in Cleveland. And in Cleveland, they reversed under 1089. And this case should have been reversed under 1089. Breyer. I'd like to back for a minute, please, to Justice Kennedy's question about page 104a. I read the court of appeals' opinion. Most of it, about six or eight pages, recites the facts. Then they discuss the law. The legal discussion is on page 104a. It's approximately 30 lines long. More than half of it concerns Federal law. I mean, they don't just cite that Federal case. They say, In assessing whether a juror is impartial for Federal constitutional purposes --"Federal constitutional purposes," the United States Supreme Court has said, da, da, da, then they quote it all. Now, since your argument, the argument in this brief here is entirely Sixth Amendment, as far as I can tell, they say, look, look what happened here. They took this man off the jury. That violates my rights, the Sixth Amendment right. It says it over and over and over. I have no doubt you raised it. And now they give an answer. And the answer that they give consists of 30 lines, and 16 of the lines consist of Federal law. So what's the problem? The problem is the remaining 14 lines do consist of State law, too. But, I mean, how can we say they didn't consider the Federal issue? Because Nessler doesn't talk one iota about kicking off a holdout juror. No, they didn't quote Nessler doesn't. What they did in Nessler is, quote, a Federal case. And what they do here is not just say Nessler, they quote the Federal case. And that Federal case has nothing to do with kicking off a holdout juror. It's all in Nessler. Well, maybe it doesn't. Maybe they didn't properly state what Federal law is. Everybody has some concerns about that one. But what I don't see is how when they spend 14 out of 27 lines quoting a Federal case which they believe sets the standard for impartiality and partiality, you can say that they didn't discuss the Federal issue. You hit the nail right on the head, Justice Breyer, because they are talking about impartiality. That's all they're talking about. They're looking at a Federal case to see what the definition of impartiality is. Breyer For constitutional purposes. And this guy was kicked off the jury because they thought he was not impartial. The bottom line is they did not apply the Federal rule. And the Federal rule is that if the jurors' views on the merits of the case have been revealed, then the jurors should not be kicked off. No, well, then your claim over in the Ninth Circuit is not that they didn't consider it, but that, rather, they considered it, but no reasonable juror could reach no reasonable jurist could reach the conclusion that they reached on the issue. That argument is open to you. The only thing I don't understand is how you're saying, or everybody, I must be wrong because everybody seems to be saying it, that they didn't reach the Federal issue when they spent 14 lines discussing it, rightly or wrongly. Respectfully, Justice Breyer, they don't talk they're just talking about a definition of one word, of what actual bias is. Which happens to be the issue in this case. The issue in this case is can you kick off a juror who has expressed 10 or 15 times and this came out right out of the bat. The foreperson was called out, asked about some notes, and said, Juror No. 6, 10 or 15 times has said, I don't think there's sufficient evidence. So that's different from whether we look at Federal law for the definition of actual bias. My — I think it's a reasonable position to say that you can't infer from this discussion of Nessler, only talking about what the definition of actual bias is, that the actual Sixth Amendment claim, and even the trial attorney was arguing, Simington, Your Honor, please don't question these jurors. The foreperson, right out of the box, said that Juror No. 6, 10 or 15 times, has already said that he thinks there isn't sufficient evidence. Breyer. Now, what the Court says about that argument, what the court of appeals says, is that the argument of your client not only misstates the evidence, that's their, not you, but their, their criticism, and then he says, It ignores the trial court's explanation that it was discharging Juror No. 6 because he had shown himself to be biased. So this court of appeals thinks the issue is whether he had shown sufficient bias. You think the answer to that is clearly no. The government thinks it's yes. And I can understand the differences of opinion, but I'm back to my question. It seems to me in 14 lines they had — they do address the Federal constitutional question of bias. And that's — that's maybe wasn't the right issue, et cetera, but — or maybe they didn't decide it correctly. But you see what's bothering me, and so I've listened to the answer. Do you want to add anything? I would respectfully request that, Brad, that reading this whole thing in context, it's clear that the California court of appeal is dealing with 1089. They are not dealing with the Federal standard that we're grappling with here, which is if a — if a juror's views on the merits of the case have been expressed, can you then interrogate all of the jurors? Sotomayor, is this a holding that the Sixth Amendment requires you to keep a biased juror as long as the juror says, I have doubts about the sufficiency of the evidence? No. If there's good cause to — Answer my question. Does the Sixth Amendment require you to keep a biased juror? No. All right. So if the Sixth Amendment doesn't require you to keep a biased juror, then why is it that the State court's finding that this juror was biased, a Sixth Amendment holding, that it wasn't violated because the juror was biased? Logic is almost inescapable to me. Right. So for a minute, we'll get into the issue that wasn't certified. But what happened in this case was the judge, the Ninth Circuit, found that the finding of bias wasn't good cause under the Federal standard, because the — Did the California court find the juror was biased? Yes. Because he was applying too high of a standard, because he said, very convinced beyond a reasonable doubt, and there was a quibble about what does the word very add to beyond a reasonable doubt? And the juror very eloquently responded that very convinced beyond a reasonable doubt is the same as convinced beyond a reasonable doubt. And so that doesn't show bias when someone wants to be biased. That was one of the things. Then they go through in those four pages about six other — they called — he gave one story to the judge, Juror No. 6. Then the prosecution calls about eight other jurors, and they come up with quite a different story about what he was telling them in the jury room, and that I'm not going to convict him. Well, he didn't quite say that. He was talking about Vietnam and talking about the slaves and you don't want to convict a person for making them return a slave. I mean, they talked about a lot of things. And he went through all that and then concludes he was biased. And your point was he wasn't biased. He was going to decide it fairly. Okay. I understand. Plus, the threshold issue is when the foreperson at the very, very, very beginning says, Juror No. 6, 10 or 15 times has said he doesn't think there's sufficient evidence, all questioning should have stopped at that point because there was no indication of bias. But — and how do we know that there is a possibility that he's being kicked off because of his views on the merits of the case? We know that because the prosecutor filed a motion saying, let's reopen questioning. And that — then the judge said, okay, yeah, let's reopen questioning. But the foreman had already said, I think your response to the jury note has satisfied that, I think we'll be fine. Yet, the prosecutor filed a motion to reopen because the prosecutor knew that this juror had reasonable doubts. And so that's why there's clear evidence in this case that the motion to dismiss the juror was based on the juror's views on the merits of the case. And also, this is not a capital case. It is just an LWOP case. And if there are no further questions, thank you. Roberts. Thank you, counsel. Ms. Brand, you have four minutes remaining. Thank you. I would just like to make about four points. First, my friend discussed the case of Smith v. Digman, and I think I would like to point this Court to the words that were used in Smith v. Digman, which is where the State court chooses to ignore in its opinion. And as this Court later said in Castile, talking about that, that's an implicit rejection. So really the way it should be interpreted is if a State court fails to mention in its opinion writing, it's implicitly rejected, not that it's been ignored. Secondly, I would just like to agree that, yes, California believes that 1089 is constitutional under the Sixth Amendment. And in fact, the Ninth Circuit in Miller v. Stanyer said that it was spatially constitutional. Third, I would just like to, yes, agree with Justice Sotomayor that here, where the trial court made the finding of bias, that answered the Sixth Amendment question. The entire argument below and throughout was this disagreement as to whether the juror was biased, or was he just having, harboring doubts about the sufficiency of the evidence. Those were the counterarguments. The trial court, by making the determination that there was bias, necessarily answered that question. Secondly, as to that point, I would just like to also point this Court to the language in People v. Cleveland that talks about agreeing with Thomas and Brown and Symington that you cannot dismiss a juror based on his views of the evidence. And that's at 21P3rd at page 1236. So you couldn't have gotten — in order to have good cause in California, you couldn't have gotten rid of him for his views of the evidence. Finally, I would just like to say that Mr. Chief Justice is correct that this would increase the litigation. We would have courts, Federal habeas courts, all the time trying to decide whether there was a sufficient indication or not by deciding whether State law is coterminous with Federal law. As we've already seen in California, following the issuance of this decision, that's exactly the type of arguments that we're getting all the time now. And for that reason, this Court should adopt the rule that where a fairly presented claim has been rejected by a State court, it has denied that claim, adjudicated that claim on the merits. If there's anything else? Thank you, counsel. The case is submitted.